UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

KELLIE PATRICE DISTEFANO,
aka KELLIE PATRICE ARNOLD,
aka KELLIE PATRICE HILL,
aka KELLIE PATRICE CLARK,

Case No. DK 18-05001
Hon. Scott W. Dales
Chapter 7

Debtor.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
Chief United States Bankruptcy Judge

I. INTRODUCTION

The United States Supreme Court earlier this year re-set the rule for holding a creditor in contempt of the discharge. *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). Before *Taggart*, the standard in the Sixth Circuit tended towards strict liability – a bankruptcy court could impose civil contempt sanctions if the creditor deliberately acted with actual knowledge of the bankruptcy case. *See In re Cantrell*, Slip Op. Case No. BG 10-03241, 2019 WL 4267723 (Bankr. W.D. Mich. Aug. 14, 2019) (surveying cases).

After *Taggart*, a bankruptcy court may only impose civil contempt sanctions for violating the discharge "if there is no fair ground of doubt as to whether the order barred the creditor's conduct," which is to say, "when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart*, 139 S. Ct. at 1801.

With the Supreme Court's standard in mind, this court must decide whether to hold Bridgecrest Acceptance Corp. ("Bridgecrest") in contempt of the discharge that the court entered in favor of chapter 7 debtor Kellie Patrice Distefano's (the "Debtor"). The task is two-fold: first, the court must decide whether Bridgecrest violated the discharge by sending an equivocal demand letter to the Debtor after disposing of its collateral under applicable state law, and second, (assuming a violation) whether there was any objectively reasonable basis for believing that the letter did not violate the discharge. For the following reasons, the court finds that the letter violates

the discharge, but at the time Bridgecrest sent the letter there was an objectively reasonable basis for concluding that it did not.

## II. JURISDICTION

The United States District Court has jurisdiction over the Debtor's case and this contested matter, 28 U.S.C. § 1334, but has referred both to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and W.D. Mich. LGenR 3.1(a).  Granting and enforcing the discharge lies at the core of the bankruptcy court's authority, 28 U.S.C. § 157(b)(2)(O), and neither party has timely suggested that the court lacks authority to resolve this dispute.  The court finds that it has jurisdiction and authority to enter a final order resolving this contested matter.

## III. BACKGROUND

The Debtor filed a voluntary petition for relief under chapter 7 on December 2, 2018 which imposed an automatic stay of collection activity under 11 U.S.C. § 362.[1]  The parties agree that Bridgecrest had notice of the case, including notice of the discharge, and that Bridgecrest's claim against the Debtor was subject to discharge.  Her case proceeded as most "no asset cases" do, with little controversy.  After initially seeking to redeem Bridgecrest's collateral -- a 2010 Toyota Prius -- the Debtor eventually agreed to surrender the vehicle to the lender, which she did at some point during the summer.

In August, after repossession, which occurred without formal relief from the automatic stay but with the assistance of Debtor's counsel, Bridgecrest conducted a foreclosure sale, receiving proceeds in the amount of $4,100.00.  On August 23, 2019, the court entered the standard form Order of Discharge (ECF No. 36, the "Discharge").   One week later Bridgecrest sent its Explanation of Calculation of Surplus or Deficiency dated August 30, 2019 (the "Deficiency Notice"), demanding payment of $8,376.93.  The Deficiency Notice, attached as Exhibit 1 to the Contempt Motion, prompted the Debtor to file her Motion for Order Enforcing Automatic Stay and for Order Awarding Sanctions for Willful Violation of Automatic Stay (ECF No 38, the "Contempt Motion"), against Bridgecrest.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

At the hearing to consider the Contempt Motion, the Debtor agreed that she was no longer seeking relief under § 362(k) (damages for willful violation of the automatic stay), but only seeking an order holding Bridgecrest in contempt of the discharge injunction and awarding damages (actual and punitive) and attorney fees.  The parties agreed there were no genuine issues of material fact in the Contempt Motion (except perhaps as to damages, if the court found contempt) and that the court should, in the nature of a summary judgment motion, decide two preliminary questions: (1) whether Bridgecrest violated the Discharge; and (2) if so, whether the court should hold Bridgecrest in contempt.

Although the court gave the Debtor an opportunity to brief the effect of *Taggart* on her motion, she declined to do so, and the court took the matter under advisement.

## IV. ANALYSIS

A. Whether the Deficiency Notice Offends the Discharge

The Deficiency Notice at the heart of this matter equivocates, somewhat, with respect to whether Bridgecrest is demanding payment.  In explaining what it means by "Deficiency," Bridgecrest writes:

> Deficiency: The disposition proceeds are less than the amount owed to us and secured by the vehicle (including applicable costs and expenses, and attorney's fees) resulting in a deficiency. *You remain liable to us for this deficiency, which you are required to pay in full upon receipt of this communications [sic].*

*See* Contempt Motion, Exh. 1, p. 1 (emphasis added).

The next section of the Deficiency Notice is the "Calculation of Surplus or Deficiency," through which the reader learns that, indeed, the "total amount of deficiency (if applicable)" is $8,376.93.  A debtor who reads the Deficiency Notice to this point could be forgiven for concluding that she owes Bridgecrest $8,376.93 which she must pay "in full upon receipt" of the communication.

At the hearing, Bridgecrest's counsel emphasized that the phase "if applicable" in the box after the phrase "amount of deficiency" softens the demand feature, but the same phrase also follows the phrase "amount of the surplus."  It is clear from the context that "if applicable" is included only to provide for the two alternatives of surplus or deficiency, not to provide for the contingency that the borrower has received her discharge.

Bridgecrest also emphasizes the disclaimer following the bold and capitalized phrase "IMPORTANT BANKRUPTCY NOTICE" which reads in full as follows:

> If either you, your spouse or anyone who is liable for this debt has filed bankruptcy, please contact us immediately at the number listed above to provide information regarding the bankruptcy case(s). *If either you, your spouse or anyone who is liable for this debt had filed bankruptcy, we may be stayed from selling the repossessed collateral and from attempting to collect any debt from you. If you received a bankruptcy discharge of your debts in the bankruptcy case, you may no longer be personally liable to us for any debt.* We may, however, seek to enforce any existing security interests and liens against the repossessed collateral and any other property that serves as collateral for the debt. We will continue to proceed in accordance with all applicable laws and agreements. This Notice of Disposition is for the purposes of complying with Article 9 of the Uniform Commercial Code and all applicable laws and agreements.

*See* Contempt Motion, Exh. 1, p. 2 (emphasis added). Certainly, this disclaimer posits that the lender "may be stayed" from taking collection activities (such as sending a demand letter) and that the Debtor "may no longer be personally liable" for the debt. The disclaimer, however, is noncommittal in this respect. It simply raises the possibility of the automatic stay or discharge injunction, while putting the onus on the Debtor to "contact [Bridgecrest] immediately at the number listed above to provide information regarding the bankruptcy case(s)." *Id.* As applied in this case, the language is itself surplus because Bridgecrest was well aware of the details regarding the Debtor's bankruptcy filing. More generally, Congress provided a discharge of debts to relieve debtors from the burdens, emotional and otherwise, of post-bankruptcy collection activity. Requiring the Debtor to respond to the Deficiency Notice by calling Bridgecrest to determine whether it was seeking to collect a debt, or not, is hardly consistent with the policy underlying the discharge.

As Bridgecrest's counsel argued during the hearing, this disclaimer does tend to soften the demand feature of the Deficiency Notice, but any such softening vanishes upon reading the last lines in capital letters that punctuate the Deficiency Notice:

> THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*See* Contempt Motion, Exh. 1, p. 2.  A debtor who reads the last lines of the document could hardly conclude that the Deficiency Notice is *not* an attempt to collect a debt because the lender expressly states that *it is*.  The court recognizes that this language is mandated by statute in some instances,[2] but doubts whether any debtor would recognize the statutory basis for including the phrase or, more to the point, would discount its coercive effect.

Further, the Deficiency Notice recites, incorrectly in the court's view, that the explanation of the deficiency or surplus "is for the purpose of complying with Article 9 of the Uniform Commercial Code and all applicable laws and agreements."  *Id*.  Bridgecrest made the same argument in response to the Contempt Motion, evidently relying on M.C.L. § 440.9616(2).  The court rejects the argument because even if the statute requires the secured party to send the calculation, it does not require the secured party to include a demand for payment, as the Deficiency Notice unquestionably does.  And, as a practical matter, the main effect of giving the Article 9 notice is to preserve the possibility of collecting a deficiency.

Moreover, having already disposed of the collateral, this is not a case in which the creditor was endeavoring "to walk the fine-line between liquidating its collateral (which is permissible) and collecting its debt as a personal liability of the Debtor (which is not)."  *In re Reuss*, Slip Op. No. DT–07–05279, 2011 WL 1522333 (Bankr. W.D. Mich. April 12, 2011); *In re Biery,* 543 B.R. 267 (Bankr. E.D. Ky. 2015) (discussing discharge in context of "ride through" of non-reaffirmed debts).  After the disposition of the collateral Bridgecrest's lien was extinguished,[3] and after the entry of the Discharge, its right to collect the deficiency as a personal liability of the Debtor was permanently enjoined.  The Deficiency Notice served no obviously lawful purpose, and was not simply informational.

The court suspects that for the sake of administrative convenience, Bridgecrest desired to use a single letter to address multiple scenarios (bankruptcy and non-bankruptcy).  The clumsy attempt to thread a needle with a single Deficiency Notice succeeded only in poking the Debtor, her counsel, and the court.  *Cf. In re Biery*, 543 B.R. at 286-87 ("How can a communication that seeks to request payment of a personal liability when sent to a non-bankruptcy customer be something different when sent to a discharged debtor?").  Sometimes, as here, one-size does not

---

[2] 15 U.S.C. § 1692e(11).
[3] M.C.L. § 440.9617(1)(b).

fit all.  The court regards sending the Deficiency Notice as an attempt to collect a debt as a personal liability of the Debtor, contrary to §§ 524 and 727.

B. <u>Whether the Court May Hold Bridgecrest in Contempt</u>

The second question is easier than the first, especially after *Taggart*.  After *Taggart*, if the court finds a "fair ground of doubt" about whether the Discharge barred the Deficiency Letter, it cannot hold the creditor in contempt, and therefore cannot award damages or attorney's fees to compensate the Debtor -- even for conduct that offends the Discharge.

Here, as Bridgecrest argued during the hearing, three factors militate in favor of finding "fair ground of doubt" about whether Bridgecrest's Deficiency Letter amounts to contempt of the Discharge.  First, as Judge Boyd recently noted in a slightly different context involving post-discharge collection of secured claims, "the presence, prominence, and clarity of disclaimer language in post-discharge communications with debtors is often a significant factor in a court's determination of whether the communications violate the discharge injunction."  *In re Cantrell,* 2019 WL 4267723, at *11 (surveying case law).  In other words, Bridgecrest may have reasonably read some of the case law as holding that a proper bankruptcy disclaimer immunizes a creditor from a contempt citation.

Second, Bridgecrest sent the letter not just to the Debtor, but also to her counsel.  This transparency may likewise create a fair ground of doubt about whether sending the Deficiency Notice to both Debtor and counsel was coercive or not.  Had Bridgecrest sought to communicate exclusively with the Debtor, its action would have seemed more coercive and contemptuous.

Third, Bridgecrest sent a single post-discharge communication.  Even before *Taggart*, the Sixth Circuit admonished bankruptcy courts to impose sanctions "with restraint and discretion." *Mapother & Mapother P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996).  It should go without saying that the court has no appetite or authority for employing the contempt power in a game of "gotcha." As the court previously observed in a similar setting, "[t]he supposed infraction that prompted the Motion should have been addressed by initiating a conversation, not a contested matter." *Reuss,* 2011 WL 1522333, at *3.

The court concludes that, although the Deficiency Notice in fact violated the Discharge, there was -- at the time Bridgecrest sent it -- fair ground of doubt in our district as to whether sending the communication was lawful, given the disclaimer and context discussed above.[4]

## V. CONCLUSION AND ORDER

Insolvency professionals may regard the discharge as a routine or repetitive occurrence to be met with a perfunctory response, but in truth the discharge is a specific injunction, in favor of a particular person, signed by an individual judge who is imposing clear-cut and well-settled statutory restrictions on identifiable creditors.  One-size-fits-all or ready-to-wear business forms may dress a creditor's correspondence to its own advantage outside of bankruptcy, but after the order for relief such standardization is no longer suitable.  Creditors -- even those with a high-volume business -- should tailor their post-bankruptcy communications to fit the requirements of the particular case.

Although the court regards the Deficiency Notice as inconsistent with the Discharge entered in this case, it declines to find Bridgecrest in contempt -- this time.  Accordingly, the court will deny the Contempt Motion, rendering moot any question of damages or attorney's fees.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Contempt Motion is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Scott Mancinelli, Esq., and Panayiotis Marselis, Esq.

END OF ORDER

**IT IS SO ORDERED.**

**Dated October 30, 2019**

Scott W. Dales
United States Bankruptcy Judge

---

[4] The court's discussion in part IV.A of this Memorandum of Decision and Order, however, should remove most (if not all) doubt about whether sending a similar notice in the future violates the discharge.